May it please the court, my name is Charles Kester. With me at the council table is Leonard Feldman of Stoll Reeves. We represent Alfred Newberry, the appellant. I would like to reserve five minutes of my time for rebuttal. The district court erred in this defamation case when it granted summary judgment because both Washington and California law indicate that Raposa's email, which was the subject matter of this litigation, was not privileged. Under Washington law, absolute immunity does not apply to Raposa's email because Raposa was never subject to the necessary safeguards against abuse of the privilege. For example, Raposa never provided a formal report. Raposa did only... Are you talking California law or Washington law now? I'm talking specifically Washington law. It's our position that this is a false conflict, and as a result, Washington would apply Washington law. Okay. So you're going to discuss only Washington law? No, Your Honor. I'll discuss California law as well. Specifically under California law, the result would be the same, based essentially on the same facts as well as a few additional facts. With respect to Raposa's brief review, he did it solely in order to help someone out and to try and make a sale, not because it was requested for litigation purposes. He was unaware that his opinion was going to be used to support litigation, and he specifically said that he would have insisted on doing more work had he been aware of that. He did not testify under oath. He was never subject to cross-examination. He was never subject to a threat of prosecution for perjury. He was never under control or disciplined by any judge either in California or in Washington. To back up a minute, what is the procedural context here? I mean, there is certainly some evidence from which you could draw a conclusion contrary to the one you're making as to what he was aware of when he spoke. He was asked for his expert witness fee. He did give his expert witness fee. And his deposition testimony is a little cagey because he keeps saying he doesn't remember whether he knew that there was going to be litigation. So it doesn't seem to me that we're applying a summary judgment type standard where we could conclude that he didn't know about the litigation or the likelihood of the litigation. So what do we do with that? I mean, was there a finding, a fact here, or is this on a cold record or what? Well, Your Honor, this is on a cold record. This is in the context of summary judgment, and that's very important. In addition, under both Washington and California law, the defendants bear the burden of proof, the actual burden of proof, persuasion, in order to establish the facts upon which the application of the privilege applies. Your position is if he thought this mattered, then there shouldn't have been summary judgment. That's absolutely correct, Your Honor. But if it didn't matter, then it's okay. If he thought it mattered whether or not he himself was aware of the litigation. That's correct, Your Honor. And, in fact, the only indication that Raposo was aware of the litigation, there was no litigation at the time that Raposo rendered his e-mail. But the language that was used in an e-mail from Mr. Modi to Mr. Raposo merely says that they might need his services, which is notable because that same language is the language that's used both in Washington cases and in California cases to say it's important to distinguish cases that might possibly arise in the future from those that are actually seriously contemplated. Mr. Blake, what would be the reason for Raposo to, for somebody to call Raposo and say, give me your opinion, if it weren't litigation? It was specifically to solve the problem. This had been a brewing problem since July, I believe it was, of 2000. And, in fact, Mr. Modi had contacted previous experts. He wasn't asked for that. He was asked for his opinion of somebody else's opinion. He wasn't asked how to solve the problem. He was asked, was this guy, essentially, was this guy negligent? That's correct. But it was in the context, the dispute was in the context of trying to figure out whether it was a design problem or a fabrication problem. But, specifically, the inquiry to Raposo was, did the prior opinion we get or did this prior engineer fail to perform adequately? Yes, Your Honor, that's correct. That was the e-mails. There was a June 24th letter and a June 27th e-mail that posed essentially that question. In addition, Mr. Raposo was never retained for any purpose by Mr. Modi. And, in fact, it's important that he disavow any involvement in the case as an expert witness when he was given the first opportunity. Unbeknownst to Mr. Raposo, Mr. Modi seizes upon his report that he provided via e-mail and provides it to his lawyer, and then the California lawsuit proceeds. This is exactly like the case in Twelker where the Washington Supreme Court ruled that a report prepared, frankly, with more formality and more care than Mr. Raposo's e-mail did not enjoy absolute privilege. The defendants have relied instead upon Bruce v. Burns-Stevens, which is, frankly, a simply different case. In Bruce, an engineer testified on behalf of a party, Bruce. Bruce was dissatisfied with the result that ultimately obtained after that testimony, and he sued his own expert witness based on a claim of negligence in the expert preparation of the testimony. The Washington Supreme Court quite sensibly held that when an expert testifies in a courtroom, that's the last step of a long process, and the entire process is protected by absolute privilege. And the language that was used by the court in Bruce was that when the preliminary steps formed the basis of courtroom testimony, it therefore falls within the scope of the privilege. And for that reason, it's clear that it's the summary judgment stage, Washington absolute privilege or immunity were not a problem. But that doesn't make a lot of sense because privilege has its impact or doesn't at the point that a statement is made. And to draw a line as to whether the person ultimately testifies or doesn't ultimately testify couldn't possibly serve the purposes of a privilege, right? In other words, if he gives the statement expecting to testify, then whether he actually testifies in this instance he backed out of testifying, they wanted him to testify, but he backed out. And it's very hard to see why that should affect the privilege. Well, Your Honor, it's unclear whether they wanted or expected him to testify. The proof in the record was that after this initial email, he was never again contacted by Mr. Moody or his attorney. So it is certainly questionable as to whether they actually wanted him to testify. But the issue, and it was actually framed this way in Bruce. Bruce took a scenario where... I thought he was contacted but refused to testify at the trial. It was Newberry who contacted him. Mr. Moody and his lawyer Higgins never contacted Mr. Raposa. That was the testimony that was in the record. This is a scenario in Bruce where... And the Supreme Court agreed that if a statement is simply taken and then that statement used in litigation, it is not retroactively infused with privilege. And that should obtain in this case. The result is essentially the same under California law. The defendants admit that the Edwards test, the four criteria that we list in the brief, are part of the Silberg logical relation requirement. They, however, end their analysis with Silberg and go no further. It's, again, the defendant's burden to prove the facts upon which they rely upon to apply the privilege. And in this case, those facts are not in the record. Number one, there is no specific proposal to litigate in the record. Nowhere. Number two, even were there to be a specific proposal to litigate, which is absent, there is no evidence in the record that it was offered in good faith. That's required by Edwards. Number three, there's no evidence in the record that were there to be a specific proposal of litigation, it was made for the purpose of obtaining access to the courts to resolve the dispute. All three of those things, which are identified as important considerations in Edwards, are lacking in this record. But in fact, because of this odd California statute, they did need his testimony, and it did, in fact, or they needed his report. And it was eventually introduced in court, in the state court, in order to prove that they, in fact, did their preliminary step. So both in terms of the Washington requirement that there be some court disciplinary proceeding available, and in terms of what you're arguing now, there is a court check on this, no? No, Your Honor. It's unusual for that reason. No, Your Honor, I would disagree that there's a court check. And the reason for that is that Mr. Raposa never appeared in California, never did anything to submit to California jurisdiction. He didn't, but the plaintiffs did because they were required to. And they did go into the state court and present the fact that he had given this opinion. They did exactly what was identified in Bruce. They took his report without his knowledge, consent, or permission, without retaining Mr. Raposa, and stuck it in a court record. That's exactly what they did. In the Bruce case, under Washington law, the court agreed that in that case it would not be privileged. Under California, it's clear that the specific proposal, the additional requirements What did he make of the fact that they asked him for his expert witness fees? Why would they have done that if he wasn't thinking that he would be retained as an expert witness? Well, they were clearly thinking that they might, and that is the language. And he responded with his expert witness fees, so he was clearly thinking that too. That they might, that's correct. That's correct, Your Honor. How could it be that he didn't know why he was being asked this? Well, he did not realize that his report, the email, was going to be used in the lawsuit. That was his specific testimony. He was totally unaware of that. But it's important, and the cases make this point repeatedly, that in this modern day and age, any dispute might result in litigation. And before the absolute privilege is extended as a blanket insulation for all types of fraud and defamation. But from the point of view of the people who asked him this, I mean, there's awfully good evidence that they specifically did it for litigation that they were already contemplating and filed two weeks later. So from their point of view, if you're looking at it from their point of view, it seems to me that any standard with regard to the contemplation of litigation is met. Do you agree with that? No, I do not agree with that, Your Honor. Why not? The reason I do not agree with that is, for example, under California, before the privilege may apply to a pre-litigation communication, and this is under Edwards, there must be a specific proposal, a verbalized or a written intent to sue, basically. There is none of that, no evidence of that. He did it because his lawyer told him to do it because he needed it for the California statute. Well, it's clear that they used the language of the California statute. But it's clear that they did it for that reason, too. There are internal emails saying, you know, is this good enough for what you need? That's correct, Your Honor. There is that email. Mr. Moody forwarded the proposed email on to Mr. Higgins, who is the California lawyer. There's no question that litigation might result in the future, but the important question here is when that long-simmering dispute ripened into imminent litigation. But why would he go? He already had an opinion from a non-professional person or a non-adequate, an engineer who didn't qualify as to whether this was negligence. The reason he needed this one was in order to go to court. That's why he needed it. Even if it is the case that he needed this in order to go to court, the question under Edwards is whether or not that was an imminent lawsuit. This is your weakest ground. I mean, the more interesting question to me is whether the witness has to contemplate the litigation. The parties clearly did. The question is whether the witness has to. Yes, Your Honor. And with respect to the witness, the witness needs to understand that there is actual testimony in a court case that is coming up in order for the reasons for the privilege, for the purpose of the privilege to be served. Basically, the purpose of the privilege Is there any California law that says that? Yes, Your Honor. That is, in Edwards, they make clear that I couldn't find any that specifically said that it matters that the witness understand that there's going to be a lawsuit rather than the parties understand it. Edwards talks about in terms of the purpose of the privilege to be served and also in Matco Ford v. Arthur Young, where that was a case that involved a party suing its own witness. In that case, they talk about it would be counterproductive to provide the privilege for a non-testifying expert would not encourage the witness to testify truthfully. By shielding negligent expert witness from liability, it has the opposite effect. The whole thing here, the whole purpose of the privilege, is to allow people to testify when they know that they're going to testify, to allow them not to have the fear of a derivative lawsuit. But unless they know they're going to testify, they have no reason to know that there's anything to fear in the future, and there's no purpose to extend the privilege. Mr. Kessler, did you want to reserve a couple of minutes? Yes, Your Honor. Thank you. We'd ask that the Court reverse and rename. Gotcha. Good morning. Good morning. I'm Jennifer Beierlein here on behalf of defendants Randy Raposa and Fiberglass Structural Engineering. May it please the Court, defendants request that the Court affirm the district court's ruling, summary judgment dismissal of Newberry's defamation claims for three reasons. The first reason is that the prior California court has already ruled that the July 1, 2003 email, which is the email that's at the center of this lawsuit, was an opinion by an expert witness. And this court has to give that prior ruling the same preclusive effect that a California court would, which is what the district court did in granting summary judgment in this favor in determining that the statements were made in relation to a proposed judicial proceeding and were therefore absolutely privileged. To me, the issue here is that from the point of view of the litigant, yes, they asked for that purpose and they got it for that purpose. The question is, does the witness have to know that? Under California law, I believe it's fairly clear that the witness does not need to know. It's either a party who's contemplating it in good faith or a witness. Both California and Washington have adopted the restatement, second of tort section 588, which involves pre-litigation statements. And that's where either the party or the witness has to know and has to contemplate in good faith here. But why does that make sense? I mean, if you're trying to, if the whole point of a privilege is that the person who's speaking not be afraid, then why aren't we looking at the person who's speaking rather than the person who's asking them? Well, I think under California law, the point of the privilege is to encourage the open access to the courts by a litigant. And here, the part of the litigant is trying to get access to the court by finding an expert to satisfy this pre-litigation opinion. So it would make sense to say, so he should be able to assure the witness that they're not going to have a defamation problem. But he didn't do that. I mean, exactly. I'm trying to fill the gap between those two things. I mean, you're right. The sentences are there. As far as I can tell, there is no case specifically dealing with this problem. Well, there is one case under California law, and it's mentioned in Seilberg. And it is the Financial Corporation of America, which is 234 Cal Reporter 653, which was in the district court's initial ruling granting a dismissal on the pleadings in this matter. And in there, the court said, which is quoted by Seilberg, that the absolute immunity is not meant to be a test of the subjective intent, purpose, or knowledge of a writer. And the intent actually can't be destroyed by another – an intent of the maker can't be – sorry, the privilege can't be destroyed by the intent. The statement is either privileged or not. And to determine whether it's privileged, you look at the apparent and ostensible relation to the litigation. So you look at the statement, whether or not it's related to the litigation, and you don't look at the intent of the party, which is why it's an absolute privilege. It's an intent to injure, it's an intent under malice, or any knowledge that the party might have in making that statement that it's really divorced from this – whether or not it's related to the litigation. And the part where intent may come in is whether or not there's an actual imminent threat of a lawsuit. And here you can look at either the party or the witness. And with this case, the party asked his attorney – took an opinion to his attorney and said, you know, here, I have an opinion. The attorney said, no, you need to go get an opinion from a licensed engineer. We can't file a lawsuit until you have that opinion. And he immediately contacted Randy. He testified, that's the reason I contacted Mr. Raposa. I got this opinion, I solicited the opinion, and I provided it to my attorney and asked him whether it was sufficient to begin legal proceedings. That's the testimony on that. That's the record. He also – Moody also testified that he was aware he had to obtain such an opinion before he could even bring a lawsuit. And that's what he did on behalf of his company when contacting Randy Raposa. Randy Raposa testified. He didn't testify he didn't know there was any litigation. He testified he knew there was a dispute. He knew that he already had an opinion from an expert. He testified that he received a request that this person was negligent in the service of his professional – or in the performance of his professional services. And he gave him an expert – or he gave him his witness fees. He also said he thought this was the first step in being retained as an expert witness in this matter, as did Moody. He testified, I thought we were going to hire him. I gave his name to my attorney. He said that he thought it was the first step in being retained as an expert witness. He did. It's in his – I don't remember saying that. In his declaration submitted in behalf of the summary judgment. I don't have the excerpt. It's not in his deposition. It wasn't in his deposition. It was in his declaration in support of the summary judgment. He stated, I thought this was the first step in being hired. That's why I provided my expert witness fees. And being hired, but being hired as an expert. I believe he said being hired as an expert witness for that matter. That's what he thought the entire consultation was about. Yes, he may have been trying to make a sale, but what expert witness is not trying to make a sale when contacted by a potential litigant? When they say, hey, I want your expert witness fees, every expert is trying to make a sale. And we argue that both California law and Washington law, this statement is absolutely privileged. So what about under Washington law? Washington law seems much more concerned with this, the protections afforded by being actually in a judicial proceeding. What is your strongest case under Washington law? Besides Bruce, there's the case of Wynn v. Aaron, which actually came down. It was an appellate court case, but the Supreme Court just came down with its decision in April of 2008, and that's Wynn v. Aaron. That and Death Ridge actually speak directly to the safeguards. And Gustafson, which we cited, also speaks about the different safeguards. And in Gustafson, they say, well, the safeguards of an oath and the safeguards of perjury actually don't matter when someone's not accusing a person of lying. When they're accusing them of negligence, those safeguards don't really have a play anyway, because they don't protect against negligence. And the safeguards that are at play here, first, as you noted before, is the fact that this statement could be reviewed by a judge and actually was reviewed by a judge later. But the second safeguard with regard to California and Washington law is a disciplinary action. And that's Death Ridge. These statements are not privileged from disciplinary actions. In Wynn, in a footnote, it says this is an alternative grounds for a safeguard with regard specifically to expert witness testimony is this disciplinary action. So although they may not be able to bring a lawsuit against an expert witness for the entire process of expert witness testimony, there's definitely a safeguard that someone can review and discipline an expert for his actions. I gather you think you prevail under either Washington or California law. That's correct. But the law doesn't seem to be exactly coextensive. Is California law more favorable to you on this? I think California law is more favorable for this specific instance. However, neither one is more expansive than the other. For example, which is noted in MATCO, you can't sue your own expert witness in Washington under Bruce for negligence, which is almost every single state doesn't find that, and California specifically doesn't find that this absolute privilege allows someone to or prevents someone from suing their own witness. And they cite Bruce and say, well, look how Bruce, Washington law is more expansive. They don't allow any suits brought against the expert witness, whereas California you don't. But here I think because everything is so tied to the California courts and there was also a privilege provided to Mr. Raposa under the California statute for his specific opinion, that there is more coverage and there's just simply more litigation and more opinions in California just over absolute immunity. But I think Bruce goes to the core, is that the entire enterprise of expert witness testimony needs to be covered or there will be a chill to litigation. And that includes a litigant's attempts at first initial consultations with an expert witness. And if those initial discussions aren't subject to the privilege, then there will be a chill. And what's interesting is that these conversations are subject to the word product privilege. So they're already a privilege communication. And it wouldn't make sense to have a word product privilege with those initial consultations and yet not also include it in the umbrella of the absolute immunity. You're talking Washington law again. Either Washington or California law. Bruce is a Washington case. Bruce is a Washington case, it is. We apply Washington law to this. I don't understand that really. This is a California lawsuit. That's our argument is that although we went under either, it's a California lawsuit, there's a California statute mandating that you get an opinion. The entire relationship is centered around California. A court has already reviewed this opinion in California, has made a ruling on the opinion in California. The defamation, if any, occurred where? Exactly. In California the defamation occurs wherever the statement is published. Here it was published in Escondido, California, where Jay Moody opened the e-mail that was sent to him in their offices in Escondido. So the ties here are definitely California ties. The expectations of the parties, any opinion that's going to be relied on, and they say that that's the damage is that they relied upon this opinion for this lawsuit. If it's relied on for a California lawsuit, both the parties were involved in California. It doesn't make sense. Let's take a discussion just through Washington law out the window and say we're going to look at this under California law. Is the issue then whether Reposa knew that litigation was, what, imminent or what's the test? It's whether a party or a witness knew that litigation was, contemplated litigation in good faith. And Edwards simply isn't relevant. Edwards in every case cited by plaintiffs in their brief is about a dispute between two parties that are disputing with each other. And at what point does a privilege apply when those parties are writing letters back and forth and maybe threatening litigation? Here it's a person who is hiring or looking for an expert opinion. He's already gone to an attorney. He's already been, you know, gave him an opinion that apparently wasn't sufficient. And the attorney said, no, go out, and in order to file this lawsuit, go out and get a different opinion, and that's what he did. So the good faith contemplation of litigation was met. So the cases do say something about having to have an explicit, as a sort of prophylactic check on all this, that there has to be an explicit statement of intent to bring a lawsuit. And those cases are only with regard to statements between parties already in dispute. There's not one case involving. How does that standard apply? Would it be met here anyway? Well, he told them, the record reflects that. Moody told them there was a dispute. He outlined the dispute. He had an expert opinion. He asked for an opinion of negligence. And what other area can you ask, is this negligent? He didn't say, hey, I have a problem, help me solve it. You know, what's going on here? He said, all I need is an opinion from a licensed engineer that knew there was negligence in the performance of his professional services. One last factual question is the representation was made that the prospective plaintiffs from the case never, in fact, contacted your client again, and that there was, this is by way of saying that he wasn't really a contemplated expert witness. Is that so, or did he just refuse to testify? He refused to testify after being contacted repeatedly by Newberry, who was the defendant in the underlying lawsuit, after he read the opinion. He emailed him. He called him. He sent him letters. He had his attorney call him, asking him to retract the statement, telling him he was wrong. And after that, he emailed Moody, and he telephoned him and said, I just don't want to be involved. But this was all before there was any reason they would particularly have contacted him. It was in the initial stages of the litigation when this happened. It was four months after the lawsuit, November, March, actually March, so a ways after the lawsuit. It was filed before all the depositions had been taken. And actually, later on, even after that, they listed him, ran a proposal. Plaintiffs in that case listed him as an expert witness in the pretrial, which again caused the attorney to call Raposa for a second time. So nobody knows. This email never should have been turned over in the first place. It's subject to numerous privileges under California law. It shouldn't have been turned over in the lawsuit. They shouldn't have received it. But that broke down, and here a litigant got the email, called, and basically harassed a person and admitted in his own deposition testimony the only reason he called them was to get a witness to not testify. Those were his words, Newberry's words. I wanted to get a witness to not testify. And that is at the excerpt of Records 394. I attempted to get a witness to see the error of his ways. That's why he called them, and then lo and behold, Raposa didn't testify. Moody actually never was able to retain an expert who was a licensed engineer in that case and then ultimately did not prevail in that case. Had the email not been overturned, had Newberry not contacted him, we don't know. He may have been asked to testify. He may have testified, and had he testified, I don't think there's a question that this email would have been privileged. We just didn't get that far. He removed himself after being contacted repeatedly. If there's no further questions. Thank you very much. Yes, sir, I think you have a couple minutes left. Thank you, Your Honor. What is the argument for Washington law applying? Well, Your Honor, Washington applies the most significant relationship test. They look at four categories of contacts in order to ascertain that. Each of those four categories of contacts leads to the conclusion that Washington law applies. All the conduct causing the injury occurred in Washington. Randy Raposa received the information both by post and by email from Mr. Moody in Washington He reviewed the information in Washington. He evaluated the information in Washington. He composed the email in Washington. He sent the email from Washington. He repeated the defamatory matter to Winston Renaud in Bellingham, Washington at the FSC office. The relevant contacts of the parties are all to Washington. Newberry is licensed in Washington. Raposa is a domiciliary of Washington. He resides in Washington still. He's licensed in Washington. He's not licensed in California. There were no calculations prepared by Raposa ever in California. There are no reports prepared by Raposa ever in California. FSC is But the short version, now that I've listened to you, is because I suppose if you're trying to protect a privilege and therefore protect his right to speak, where he would speak would be the key question. That's correct. And this is particularly important with email because what if instead of opening the email in California, Mr. Moody opened the email in Iran? Does Iranian law apply? That's something that's different between Well, it was sent to him in California, so that's not a very good argument. Well, he didn't know where it was going to be opened. It was sent to a person who resided in California. That's correct, Your Honor, or did business in California. But the difference between email and mail or a telephone number is it does have inherent geographic limits to them. A hard line is wired to a specific place. An address that has a physical address for delivery is going to a specific place. An email can be opened anywhere, and that completely defeats the purpose of choice of law principles if it can be opened anywhere. I was struck as I listened to Ms. Byerlin speak about the issues in the case to hear issue after issue of fact, and it's important to remember that this was a case decided on summary judgment. And I see that my time has expired, and so if I could briefly conclude, those issues of fact preclude summary judgment, and we would ask that the court reverse and remand the case for trial.  Thank you. Thank you to Ms. Byerlin. The case is argued as submitted. Good morning. 0735549 St. Paul. Marine fire, fire and rain versus.
judges: Silverman, Berzon, Mahan